IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| THOMAS J. THOMPSON, INDIVIDUALLY AND AS THE GUARDIAN OF K'HIRY GALLAGHER-THOMPSON, | ) ) ) ) ) | CIV. NO. 11-00791 BMK<br><br>ORDER DENYING WITHOUT PREJUDICE DEFENDANT WILLIAM L. LUM'S MOTION TO |
|---|---|---|
| Plaintiff, | ) ) | COMPEL THE UNITED STATES TO REPRESENT DEFENDANT |
| vs. | ) ) | WILLIAM L. LUM, SUBSTITUTE THE UNITED STATES AS |
| UNITED STATES OF AMERICA, ET AL., | ) ) ) | DEFENDANT FOR WILLIAM L. LUM, AND DISMISS WILLIAM L. LUM FROM LAWSUIT |
| Defendants. | ) ) | PURSUANT TO 28 USC §2679 |

ORDER DENYING WITHOUT PREJUDICE DEFENDANT WILLIAM L. LUM'S MOTION TO COMPEL THE UNITED STATES TO REPRESENT DEFENDANT WILLIAM L. LUM, SUBSTITUTE THE UNITED STATES AS DEFENDANT FOR WILLIAM L. LUM, AND DISMISS WILLIAM L. LUM <u>FROM LAWSUIT PURSUANT TO 28 USC §2679</u>

Before the Court is Defendant William L. Lum's Motion to Compel the United States to Represent Defendant William L. Lum, Substitute the United States as Defendant for William L. Lum, and Dismiss William L. Lum from Lawsuit Pursuant To 28 USC §2679 (Doc. 58). Plaintiff Thomas J. Thompson, Individually and as the Guardian of K'hiry Gallagher-Thompson, partially joins in the Motion. Defendant United States of America opposes the Motion. The Court heard this Motion on April 8, 2014. After careful consideration of the Motion, the supporting

and opposing memoranda, and the arguments of counsel, the Court DENIES Lum's Motion without prejudice.

FACTUAL BACKGROUND

This is a Federal Tort Claims Act action for damages arising from a sexual assault allegedly committed by Defendant William L. Lum. At all relevant times, Lum was a recruiter for the Army National Guard. (Lum Decl'n at 3.)

In late July 2009, Lum was informed that Plaintiff Thomas J. Thompson's daughter, K'Hiry Gallagher-Thompson, was interested in joining the National Guard. (Id. at 3-4.) They eventually met at Kahala Mall, where she took her Enlistment Screening Test. (Id. at 4.) When Lum told her she did not finish the test, she said "she wasn't interested in the Guard at that time and was more interested in me." (Id.) Regardless of her comment, Lum says he attempted to set up another meeting with K'hiry so she could finish the test. (Id. at 4.) Additionally, Lum wanted to meet K'hiry's father, who was a Mixed Martial Arts ("MMA") fighter, hoping that her father could help him recruit within the MMA community. (Id.)

After the initial meeting, Lum met with K'hiry twice, both times at his home. The first meeting was during the first week of August 2009, when K'hiry contacted him because "she just wanted to hang out." (Lum Statement at 1.) At the time, he was home playing video games with his roommate, Riley Lloyd. (Id.;

Lloyd Statement at 1-2.) When she arrived at about 6 p.m., they asked her if she wanted to play video games with them. (Id.; Lloyd Statement at 2.) She said no and instead looked at MySpace on Lum's computer, danced and sang, made sexual innuendos, and "talked about things that didn't interest us." (Lum Statement at 2; Lloyd Statement at 3.) Lum and his roommate continued to play video games until she left.

A week later, K'hiry texted Lum and asked if she could come over. (Lum Statement at 2; Lloyd Statement at 3.) She gave him a hug and sat on the couch. (Lum Statement at 2; Lloyd Statement at 3.) After she realized she bled onto the couch cover, she used the bathroom, made a sexual comment, and left. (Lum Statement at 2; Lloyd Statement at 3.)

## DISCUSSION

Lum asks the Court to find that he was acting within the scope of his employment as an employee of the United States at the time of his conduct alleged in the Complaint. If the Court finds that Lum was acting within the scope of his employment, he further asks the Court to order the United States to be substituted as the defendant in place of him and to dismiss him from the lawsuit.

The Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA") immunizes United States employees from liability for their

"negligent or wrongful acts or omissions . . . while acting within the scope of their office or employment." Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993) (per curiam) (quoting 28 U.S.C. § 2679(b)(1)). The Attorney General certifies whether a United States employee was acting within the scope of his employment at the time of an event giving rise to a civil claim. Id. (citing 28 U.S.C. § 2679(d)(1), (2)). Once certification is granted, FELRTCA requires the substitution of the United States as the defendant. Id. (citing 28 U.S.C. § 2679(d)(1), (2)). Under the terms of FELRTCA, the substitution of the United States leaves the plaintiff with a single avenue of recovery, the Federal Torts Claim Act. Id.

A plaintiff may challenge the Attorney General's scope of employment certification in the district court. Id. Likewise, if the Attorney General denies certification, as he did here, the employee may petition the court for certification. Id. (citing 28 U.S.C. § 2679(d)(3)). The Attorney General's decision regarding scope of employment certification is subject to de novo review in the district court. Id. "[T]he party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." Id.

This Court turns to Hawaii law on respondeat superior to determine whether Lum was acting within the scope of his employment when he met with

4

K'hiry on the two occasions in question.  Id. at 698-99 (noting that courts "apply respondeat superior principles of the state in which the alleged tort occurred"); see also Villeza v. United States, CV. NO. 05-00043 JMS-BMK, 2006 WL 278618, at *3 (D. Haw. Jan. 5, 2006).  The Hawaii Supreme Court applies the Restatement (Second) of Agency § 228 to determine whether conduct falls within one's scope of employment.  Villeza, 2006 WL 278618, at *3 (citing Henderson v. Prof'l Coating Corp., 819 P.2d 84, 88 (Haw. 1991)).  Under the Restatement:

> Conduct of the servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits; [and]
> (c) it is actuated, at least in part, by a purpose to serve the master[.]

Restatement (Second) of Agency § 228; Villeza, 2006 WL 278615, at *3.

Although Lum states in his recent declaration that he met with K'hiry twice at his home in an effort to further his recruiting efforts, Sworn Statements to the Department of the Army by Lum and his roommate suggest that Lum's meetings with K'hiry were not related to his employment as a recruiter.  Lum first met with K'hiry at his home at about 6:00 p.m. in the evening while he and his roommate were playing video games.  (Lloyd Statement at 2.)  K'hiry texted Lum that "she just wanted to hang out."  (Lum Statement at 1.)  According to Lum and his roommate,

5

they continued to play video games after she arrived, and they offered her to play a game with them. (Id. at 2; Lloyd Statement at 2.) Instead, K'hiry looked at MySpace on Lum's computer, "talked about things that didn't interest us," "made some sexual innuendos," and sang and danced for them while Lum and his roommate continued to play video games. (Lum Declaration at 5; Lum Statement at 2; Lloyd Statement at 2.) She left a few minutes later without discussing her recruitment into the National Guard at all.

The second time K'hiry went to Lum's home was a week later, in the afternoon. (Lum Statement at 2; Lloyd Statement at 3.) K'hiry texted him to ask if she could come over. (Lum Statement at 2.) When she got there, she hugged him and sat on the couch while he got her a glass of water. (Id.) After she bled onto the couch cover and went to the bathroom, she apologized and made a sexual comment. (Id.) Then she left. (Id.) There were no discussions regarding recruitment.

Lum fails to meet his burden of establishing by a preponderance of the evidence that his conduct during the two occasions K'hiry was at his home fell within the scope of his employment as a National Guard recruiter. Although Lum presents his Declaration which claims he intended to recruit her and her father's friends, no discussions regarding recruiting occurred at these meetings. Instead, Lum was playing video games while she was dancing, singing, and making sexual

6

comments. This conduct was not the type he was employed to perform as a recruiter for the National Guard. Further, the two meetings were not within authorized time and space limits for his employment; rather they were at his home, after work, during the afternoon and evening. Lastly, the evidence does not establish that his conduct was actuated by a purpose to serve the National Guard because no discussions regarding recruitment occurred at his home. The Court therefore finds that Lum fails to meet his burden of establishing by a preponderance of the evidence that his actions were within the scope of his employment. See Green, 8 F.3d at 698.

Accordingly, Lum's Motion to Compel the United States to Represent Defendant William L. Lum, Substitute the United States as Defendant for William L. Lum, and Dismiss William L. Lum from Lawsuit (Doc. 58) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 22, 2014.



　/S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Thompson v. United States of America, et al., CIV. NO. 11-00791 BMK; ORDER DENYING WITHOUT PREJUDICE DEFENDANT WILLIAM L. LUM'S MOTION TO COMPEL THE UNITED STATES TO REPRESENT DEFENDANT WILLIAM L. LUM, SUBSTITUTE THE UNITED STATES AS DEFENDANT FOR WILLIAM L. LUM, AND DISMISS WILLIAM L. LUM FROM LAWSUIT PURSUANT TO 28 USC §2679.